UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA BROWN EL,

       Plaintiff,

       v.

DENNIS OPARAUGO,

       Defendant.

Civil Action No. 19-3804 (CKK)

## MEMORANDUM OPINION

This matter is before the Court on Dennis Oparaugo's motion for judgment on the pleadings and Lisa Brown El's motions to compel and for sanctions. For the reasons discussed below, the Court grants the Oparaugo's motions and denies all others.[1]

---

[1] The Court's consideration has focused on the following documents and their attachments:
- Complaint, ECF No. 1
- Defendant's Motion for Judgment on the Pleading, ECF No. 21
- Plaintiff's Answers to Defendant's Motion for Summary Judgment, ECF No. 23
- Reply to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, ECF No. 24
- Motion to Compel the Judge Colleen [Kollar]-Kotelly to Sanction Defendant and Counsel for failure to provide Documentation requested in two previous Motions, ECF No. 26
- Defendant's Opposition to Plaintiff's Motion to Compel, ECF Nos. 27 and 28
- Plaintiff's Motion for Sanctions, ECF No. 30
- Defendant's Opposition to Plaintiff's Motion for Sanctions, ECF No. 32

1

**I. BACKGROUND**

    **A. Procedural History**

Lisa Brown El initiated this civil action on December 23, 2019, when she filed her original complaint (ECF No. 1, "Compl."). The complaint listed five plaintiffs, but only Brown El signed the complaint and submitted an application to proceed *in forma pauperis* (ECF No. 2). On January 28, 2020, the Court issued an Order (ECF No. 3) that, within 30 days, the remaining four plaintiffs either submit applications to proceed *in forma pauperis* or pay the $402 filing fee in full. If the other four plaintiffs were minors, the Order directed Brown El either to demonstrate that she was acting as the minors' next friend or to submit an amended complaint dismissing the other four as party plaintiffs.

The case remained open for more than one year with no activity until April 21, 2021, when Brown El responded to the January 28, 2020, Order. In a "Revised Complaint" (ECF No. 5), Brown El explained that she was "removing all family members previously named in this action." She submitted another "Revised Complaint" (ECF No. 4) on April 28, 2021, listing herself as the sole plaintiff.

On May 11, 2021, the Court issued a Memorandum and Order (ECF No. 6) dismissing Bruce K. Brown II, Jewel L. Brown, C.O. Gordon and A.M. Gordon as party plaintiffs, declaring the original complaint (ECF No. 1) the operative pleading, and granting Brown El's application to proceed *in forma pauperis*. The Clerk of Court issued a summons on May 14, 2021 (ECF No. 7), and according to the return of service (ECF No. 9), defendant (hereinafter "Oparaugo") was served on May 24, 2021.

Oparaugo, then proceeding *pro se*, prepared a response to the complaint, dated June 2, 2021, and sent it to the Court by certified mail on June 4, 2021. *See* Def.'s Opp'n to Pl.'s Mot. to Compel (ECF No. 28) ¶ 5; *see id.*, Ex. A (ECF No. 28-1). The Court treated the response as Oparaugo's answer, and on June 30, 2021, granted leave to file it. *See* Answer (ECF No. 11) at 1. Counsel entered an appearance (ECF No. 13) for Oparaugo on August 13, 2021, and filed a motion for judgment on the pleadings (ECF No. 21) on September 24, 2021. Brown El (hereinafter "Plaintiff") timely filed her opposition (ECF No. 23, "Pl.'s Opp'n") on October 25, 2021, and Oparaugo filed a reply (ECF No. 25) on November 1, 2021.

### B. Plaintiff's Factual Allegations and Legal Claims

Plaintiff rented a house from Oparaugo at 3737 Horner Place, S.E., Washington, DC. *See* Compl. at 1 (page numbers designated by CM/ECF); Pl.'s Answers to Def.'s Mot. for Summ. J. (ECF No. 23, "Pl.'s Opp'n"), Ex. 1 (ECF No. 23-1, Real Estate Lease). According to Plaintiff, in May 2018, "a deluge of bricks, mortar and other portions of the chimney came crashing down on the rear deck" of the house. Compl. at 1. Plaintiff further alleged that Oparaugo "fail[ed] to maintain the property in a safe . . . manner," *id.*, and, among other defects, alleged that improper water drainage resulted in damage to the interior walls, ceilings and floors, *see* Pl.'s Opp'n at 2 (page numbers designated by CM/ECF); *see also id.*, Ex. 2 (ECF No. 23-1 at 6-7, Inspection Checklist).

Plaintiff brings an intentional infliction of emotional distress ("IIED") claim, Compl. at 1, alleges Oparaugo's "negligence was deliberate and preventable," *id.* at 2, and accuses Oparaugo of fraud, *id.* at 1; *see generally* Pl.'s Opp'n, Ex. 5 (ECF No. 23-1 at 15-16, Pl.'s Decl.) (page numbers designated by CM/ECF). As a result, Plaintiff alleges, she sustained

3

non-physical injuries, *see* Compl. at 1 (alleging Plaintiff's family "was traumatized and their lives were threatened"); Pl.'s Decl. at 15 (stating that falling chimney rendered Plaintiff "close to death"), 16 (alleging Plaintiff "went into a severe depression" and experienced "anger and hopelessness" prompting her to "see[] a therapist to work through these intense emotions"), for which she demands "thirty million dollars in compensatory and punitive damages," Compl. at 2.

## II. DISCUSSION

### A. Oparaugo's Motion for Judgment on the Pleadings

#### 1. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such motion is "functionally equivalent to a Rule 12(b)(6) motion." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012); *see Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004) ("[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6)."). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Rollins*, 703 F.3d at 130 (concluding that that *Iqbal* and *Twombly* apply to Rule 12(c) motions). In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678)).

"The moving party must demonstrate [his] entitlement to judgment in [his] favor, even though the 'court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant.'" *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760-61 (D.C. Cir. 2019) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987) (collecting cases), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006)) (additional citation and internal quotation marks omitted). The Court may not "rely on facts outside of the pleadings, must construe the complaint in a light most favorable to the plaintiff, and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Brown v. District of Columbia*, 249 F. Supp. 3d 439, 442 (D.D.C. 2017) (quoting *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007)) (internal quotation marks omitted).

### 2. Intentional Infliction of Emotional Distress

"In order to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant[], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Williams v. District of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010) (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)) (internal quotation marks omitted). An IIED claim survives a motion to dismiss if a plaintiff alleges "conduct that was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)); *see Ferenc v. World Child, Inc.*, 977 F. Supp. 56, 59 (D.D.C. 1997) (citing *Waldon v. Covington*, 415 A.2d 1070, 1076, (D.C. 1980)), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). "The requirement of outrageousness is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994) (citing *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotations and citations omitted) (*amended by* 720 A.2d 1152 (D.C. 1998)).

Oparaugo argues that the few facts set forth in the complaint "do not establish any 'extreme or outrageous' conduct," and instead merely "allege[] a failure to maintain the property . . . leading to an isolated event" which neither "caused . . . personal injuries" nor would have "cause[d] severe emotional distress in a reasonable person in the Plaintiff's position." Def.'s Mem. at 5. The Court concurs.

An IIED claim could arise in the context of a landlord-tenant relationship. *See, e.g., Pleznac v. Equity Residential Mgmt., L.L.C.*, 320 F. Supp. 3d 99, 109 (D.D.C. 2018) (allegations that landlord retaliated against tenant by initiating lawsuits against her, refusing to make repairs in her unit, and targeting her for mistreatment by staff, survived motion to dismiss); *Morton v. District of Columbia Housing Auth.*, 720 F. Supp. 2d 1, 10–11 (D.D.C. 2010) (denying motion to dismiss IIED claim where "a reasonable juror could find that the Housing Authority's conduct was outrageous and committed in reckless disregard of the plaintiffs' welfare"). Even if Oparaugo were responsible for the poor condition of Plaintiff's

former residence, "bad conditions alone are not sufficient to support a claim of intentional infliction of emotional distress." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935 (D.C. 1995), *opinion amended on denial of reh'g*, 681 A.2d 1097 (D.C. 1996); *see Bernstein*, 649 A.2d at 1075.

Furthermore, Plaintiff's allegations of emotional distress fall short. In conclusory fashion, Plaintiff states that she and her family members were "traumatized" and believed "their lives were threatened." Compl. at 1. Such assertions are far too vague to survive Oparaugo's motion. *See Johnson v. Paragon Sys., Inc.*, 195 F. Supp. 3d 96, 100 (D.D.C. 2016) (concluding IIED claim failed as a matter of law where plaintiff "confines his description of his injuries to general statements such as 'undue stress' and 'humiliation'"); *Futrell*, 816 A.2d at 808 (finding allegations of "'mental anguish' and 'stress' would not rise to the level of the 'severe emotional distress' required by the case law").

### 3. Negligence and Negligent Infliction of Emotional Distress

"It is well-established that a claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) (citation omitted); *see Williams v. Baker*, 572 A.2d 1062, 1064 (D.C. 1990) (en banc) ("It is fundamental in tort law that one can be held liable for negligence only if there was a duty, breach of that duty, and injury proximately caused by the breach."). A plaintiff may pursue a negligence claim even if the injury she suffers is not a physical injury. *See Hedgepeth*, 22 A.3d at 804 (remarking that "*Williams* and its progeny dispensed with the notion that emotional distress must be accompanied by physical injury if the plaintiff is to

7

recover damages"). The injury must be serious and verifiable, *see Williams*, 572 A.2d at 1068 (citation and quotation marks omitted), and any "emotional distress must be acute, enduring or life-altering," *Hedgepeth*, 22 A.3d at 817.

A negligent infliction of emotional distress ("NIED") claim may proceed under either the zone of danger theory or the special relationship theory. *See Whittaker v. Court Servs. & Offender Supervision Agency for District of Columbia*, 401 F. Supp. 3d 170, 186 (D.D.C. 2019). Under a "zone of danger" theory:

> [I]f the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for . . . her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence.

*Williams*, 572 A.2d at 1067. A plaintiff finds herself within the zone of danger if she allegedly is "'physically endangered by the defendant's negligent activity.'" *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 69 (D.C. 2015) (quoting *Johnson v. District of Columbia*, 728 A.2d 70, 77 (D.C. 1999)). "A classic example is that of the reckless driver who speeds by a pedestrian, missing her by only inches." *Arias v. DynCorp*, 752 F.3d 1011, 1017 (D.C. Cir. 2014).

Alternatively, under a special relationship theory:

> [A] plaintiff may show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

8

*Kowalevicz v. United States*, 302 F. Supp. 3d 68, 78 (D.D.C. 2018) (quoting *Hedgepeth*, 22 A.3d at 810–11) (internal quotation marks omitted)). The parties' landlord-tenant relationship does not appear to have implicated Plaintiff's emotional well-being, and the Court follows the parties' lead by proceeding under the "zone of danger" theory only.

Oparaugo argues that the complaint fails to allege enough facts to make out a *prima facie* NIED claim. *See* Def.'s Mem. at 4. Plaintiff does "not claim[] to have been anywhere near the immediate area of the alleged partial chimney collapse at the time of the incident," and thus fails to demonstrate that she could have been within "any 'zone of physical danger.'" *Id.* Review of Plaintiff's submissions supports Oparaugo's position.

Plaintiff does not allege that she or a family member was present on May 18, 2018, when "a deluge of bricks, mortar and other portions of the chimney came crashing down on the rear deck" of the house she rented from Oparaugo. Compl. at 1. Rather, Plaintiff states that she and her family had been standing on the deck the previous day, *see* Pl.'s Decl. at 15, roughly three feet from the spot where the chimney landed, *see* Pl.'s Opp'n at 3. If Plaintiff and her family members were not present when and where the chimney collapsed, it is unclear how they could have been "within 1 hour of certain death," *id.* at 16, or in or near the path of falling debris. Absent factual allegations that Plaintiff was within the zone of physical danger brought about by falling debris, her NIED claim fails.

### 4. Fraud

"The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Saucier v. Countrywide Home*

9

*Loans*, 64 A.3d 428, 438 (D.C. 2013) (citations and internal quotation marks omitted). A plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This is a heightened pleading standard which requires that a complaint must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

Where, as here, Plaintiff neither addresses the elements of a common law fraud claim nor states with particularity the acts from which her fraud claim arises, the complaint fails to state a viable fraud claim. *See Lewis v. Full Sail, LLC*, 266 F. Supp. 3d 320, 325 (D.D.C. 2017) (where plaintiff "has not provided any specifics concerning misrepresentations made by [defendants]" he "has not pleaded with particularity the fraudulent representations of [defendants], and thus he has failed to state a claim of fraud."); *Carter v. Bank of America, N.A.*, 888 F. Supp. 2d 1, 14 (D.D.C. 2012) (noting plaintiff's failure to plead elements of fraud claim, to "provide[] even approximate dates of when fraudulent statements were made to her [and] the specific nature of the assurances").

### B. Plaintiff's Motions to Compel and for Sanctions

Plaintiff filed a motion to compel (ECF No. 26, "Mot. to Compel") on November 22, 2021. She noted the 28-day discrepancy between Oparaugo's June 2, 2021, submission (construed as his answer to the complaint) and its entry on the docket on June 30, 2021. Plaintiff suggested that the delay "gives the appearance of unethical activity." Mot. to Compel at 1 (page numbers designated by CM/ECF). Plaintiff also claimed to have sent motions to

Oparaugo's counsel on November 4, 2021, and November 17, 2021, demanding an explanation of the "date and method used to deliver answer to Complaint to the Court." *Id.* at 2. According to plaintiff, counsel ignored her motions. *See id.* at 1-2. Continuing with her inquiry regarding Oparaugo's answer, plaintiff filed a motion for sanctions (ECF No. 30, "Mot. for Sanctions") on April 30, 2022. According to Plaintiff, Oparaugo had not "clarif[ied] how and when [his] Answer . . . was delivered to the court." *Id.* at 3 (page numbers designated by CM/ECF). Plaintiff considered Oparaugo's response to this "vital question" relevant to "to the integrity of the court." *Id.* at 7.

Plaintiff asks the Court to impose sanctions on Oparaugo and his counsel for their purported failure to respond to her requests for information pertaining to the filing of the answer. *See* Mot. to Compel at 2; Mot. for Sanctions at 2-3. The motions are meritless. Oparaugo has established the date and method by which he mailed his answer to the Court, and any delay in docketing the answer is attributable to the Court.

**III. CONCLUSION**

The Court concludes that Plaintiff's complaint fails to state IIED, NIED and fraud claims, and therefore GRANTS Oparaugo's motion for judgment on the pleadings. An Order is issued separately.

DATE: June 10, 2022            /s/
                               COLLEEN KOLLAR-KOTELLY
                               United States District Judge

11